IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  13-cv-01686-LTB

JANE DIANE GREEN,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

        Defendant.

_____

ORDER
_____

      Plaintiff, Jane Diane Green, appeals from the Social Security Administration ("SSA")

Commissioner's final decision denying her application for supplemental security income, filed

pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§1381-1383c.  Jurisdiction is proper

under 42 U.S.C. §405(g).  Oral argument would not materially assist me in the determination of

this appeal.  After consideration of the parties' briefs, as well as the administrative record, I

REVERSE and REMAND the Commissioner's final order for further proceedings.

## I.  STATEMENT OF THE CASE

      Plaintiff seeks judicial review of the Commissioner's decision denying her application

for supplemental security income filed on November 13, 2007. [Doc #10 – Administrative

Record ("AR") 148]  After the application was initially denied on January 24, 2008 [AR 91], an

evidentiary hearing was held on September 16, 2009, and a second evidentiary hearing was held

on June 22, 2010. [AR 50, 64]  An Administrative Law Judge ("ALJ") issued a written ruling on

July 26, 2010. [AR 32]  In that ruling the ALJ denied her application on the basis that she was

not disabled because Plaintiff had the residual functional capacity ("RFC") to perform work

existing in significant numbers in the national economy (Step Five).  [AR 43-44]  The SSA

Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's

determination, making the SSA Commissioner's denial final for the purpose of judicial review.

[AR 1]  *See* 20 C.F.R. §416.1481.  Plaintiff timely filed her complaint with this court seeking

review of the Commissioner's final decision.

## II. FACTS

Plaintiff was born on October 6, 1960. [AR 148]  She was forty-nine years old on the

date of the ALJ's decision, and had completed two years of college education. [AR 185]  She

had worked as a cashier for Walmart, a waitress, and a sampler at Safeway. [AR 158-59, 182]  In

her application, Plaintiff alleged she became disabled on July 31, 2006 due to her depression,

anxiety, asthma, irritable bowel syndrome, joint pain, a torn hamstring in her right leg, right knee

problems and her need to use a cane. [AR 181]

### A. Mental Health Records

The medical records reveal that at the time of her onset date, Plaintiff had been receiving

at least occasional mental health treatment for depression at Southwest Colorado Mental Health

Center. [AR 465-66]  On October 6, 2005, Lori Raney, a psychiatrist with Southwest Colorado

Mental Health, assessed major depressive disorder, generalized anxiety disorder, borderline

personality disorder and chronic pain. [AR 466]  On April 7, 2006, Dr. William Karls, another

psychiatrist at Southwest Colorado Mental Health Center, assessed major depression. [AR 465]

On August 1, 2006 – the day after her alleged date of disability – Plaintiff reported to

Emergency Services at Southwest Colorado Mental Health Center having a "meltdown" due to

stressful circumstances at work causing her anxiety and physical symptoms. [AR 458-64]  At

that time her Mental Health DSM was assessed as major depressive disorder, recurrent, unspecified; anxiety disorder NOS; social phobia, generalized; sedative, hypnotic or anxiolytic abuse; and personality disorder NOS.  In addition, it noted chronic pain, asthma, irritable bowel syndrome, migraines, arthritis, and moderate housing problems and problems with primary group, as well as severe economic problems.  Her Global Assessment of Functioning ("GAF") was assessed at 35 as the lowest, and 50 at the highest, with her current GAF at 45. [AR 460] The emergency service summary indicates that the therapist "[d]iscussed options for client around her job and she chose to call Walmart while meeting with therapist and quit her job as this would bring her a lot of relief." [AR 458]  Plaintiff recalls that she was fired from Walmart at this time because she failed to report and did not call in sick. [AR 180]

Thereafter, Plaintiff continued to see Dr. Raney, Dr. Karls and advanced practice nurse Lorraine Pearson, at Southwest Colorado Mental Health Center. [AR 227-41, 457-69]  On October 11, 2006, Ms. Pearson assessed major depressive disorder and, on November 20, 2006, she assessed Plaintiff with major depressive disorder "recurrent, mild." [AR 457, 227]  Dr. Raney assessed mood disorder, NOS - rule out bipolar, and PTSD on March 20, 2007. [AR 228]

Beginning in April of 2007, Plaintiff saw Ms. Pearson almost monthly. [AR 230-41]  Ms. Pearson's assessment was major depressive disorder, panic disorder with agoraphobia, and rule out bi-polar disorder. [AR 230-35]   In the additional records furnished to the SSA Appeals Council after the ALJ's decision was rendered, Plaintiff provided a Colorado Department of Human Services MED-9 form, dated May 3, 2007, in which Ms. Pearson described Plaintiff's clinical history and mental status as a:

> history of depressive disorder and anxiety attacks. She also has chronic pain, migraines and asthma. She experiences anxiety with agoraphobia and is often unable to leave her apartment.  She has been unable to work due to depression, anxiety and migraines. [AR 516]

Ms. Pearson opined that Plaintiff's prognosis was an expected length of disability of 12 months or longer in that her "anxiety/agoraphobia, migraines and chronic pain need to be managed in order for [her] to sustain employment." [AR 516]

 By September 2007, Pearson's assessment of Plaintiff was major depressive disorder, recurrent, as well as anxiety disorder NOS, 2 spectrum disorder with panic attacks, social anxiety disorder, generalized anxiety disorder and agoraphobia. [AR 237]  On November 8, 2007, Ms. Pearson noted a small improvement in Plaintiff's anxiety and intensity of panic. [AR 241]  Her affect was evaluated as available and appropriate, and her mood was anxious.  Assessment was major depressive disorder, recurrent; anxiety disorder NOS; 2 spectrum disorder with panic attacks; social anxiety disorder; generalized anxiety disorder; and agoraphobia. [AR 241]  On January 10, 2008, Ms. Pearson noted that Plaintiff was not doing any better, and her assessment was: panic with agoraphobia, PTSD, rule out bi-polar, and chronic pain. [AR 351-52]  During this time, Plaintiff was prescribed various prescription medications for the treatment of her mental health issues. [AR 243-4]  For example, on November 15, 2007, Plaintiff reported taking Lexapro for depression, Vistaril for itching and Xanex for anxiety and agoraphobia. [AR 184]

In January of 2008, a non-examining doctor, M. Berkowitz – identified by the SSA as a psychologist – reviewed Plaintiff's medical records and completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment. [AR 250-63, 264-66]  Dr. Berkowitz noted that Plaintiff suffered from the following affective disorders:  Depressive

Syndrome (characterized by sleep disturbance or decreased energy or difficultly concentrating or thinking) and Anxiety Disorder. [AR 253]  Dr. Berkowitz indicated that Plaintiff's records showed that she was moderately limited in her ability to:  maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; and complete a normal workday and workweek without interruption from psychological based symptoms, and perform at a constant pace. [AR 264-65]  Dr. Berkowitz noted that, although Plaintiff identified "a number of depressive symptoms which appear to be of moderate intensity," she managed to function and handle her activities of daily living adequately although it does take effort for her to persist. [AR 266]  He indicated that the examinations in the record did not demonstrate any significant social deficits, and her mental status examination results generally reflected intact cognitive functioning. [AR 266]  In conclusion, Dr. Berkowitz opined that while Plaintiff's "allegations are partially credible and her overall stress tolerance is reduced, she does appear capable of simple to slightly more complex tasks with no more than moderate public contact." [AR 266]

As of February 14, 2008, Ms. Pearson noted that Plaintiff was not participating in treatment. [AR 349] At that time Ms. Pearson's assessment was major depressive disorder, recurrent and unspecified; anxiety disorder NOS 2 – Spectrum disorder with panic attacks; social anxiety disorder, generalized anxiety disorder, and agoraphobia. [AR 349]        On March 31, 2008, Plaintiff reported to Dr. Raney that she had been on and off her medications, and she lacked the ability to follow through with the treatment plan. [AR 347]  Dr. Raney noted she was neatly dressed, walked with a cane, was cooperative, tremulous, anxious, sad, tearful, poor sleep, low energy, increase in appetite, although no suicidal ideation and she was alert and oriented X3.

Her assessment continued to be major depressive disorder, and anxiety disorder NOS. [AR 347] In the additional records furnished to the SSA Appeals Council, Plaintiff provided a Colorado MED-9 form, dated March of 2008, in which Dr. Raney opined that Plaintiff's diagnosis was major depression and anxiety disorder, and that she was disabled for longer than 12 months due to her nervousness, anxiety, walking with a cane and being "sad." [AR 517-518]

Plaintiff then attended four sessions with Eric Foss, a counselor with Southwest Colorado Mental Health Center, in March, April and May of 2008. [AR 343-46]  During their last session on May 6, 2008, Mr. Foss indicated that Plaintiff reported to the session under the influence of prescription medications she had taken for a migraine. [AR 343]  Thereafter, on June 23, 2008, Petitioner saw Dr. Raney and refused further counseling services with Mr. Foss.  At that appointment,  Dr. Raney's assessment remained major depressive disorder, and anxiety disorder, NOS. [AR 341]  On July 17, 2008, Plaintiff reported to Ms. Pearson that she doing well emotionally, but was still battling her migraines. [AR 339]

Starting in October 2008, Plaintiff began regular counseling sessions with Eileen Andricovich, LMFT, at Southwest Colorado Mental Health Center. [AR 317-36, 422-56] During her appointments with Ms. Andricovich, Plaintiff reported panic and anxiety symptoms, as well as migraines and pain management that interfered with her normal functioning, and that her daily life was very isolated. [AR 336]  On December 19, 2008, Plaintiff reported being happy with the birth of her grandson and continued to report joy in connecting with and caring for him. [AR 317, 320-21, 330]

Plaintiff then saw Dr. Karls on January 14, 2009, reporting increased migraines, and a mix of anxiety and depressive symptoms.  He assessed major depressive disorder and anxiety

disorder NOS, and adjusted her medications. [AR 328]  On February 12, 2009, Plaintiff reported to Dr. Laney that she was better, but she was a "shut in," and that her counseling session were helping. [AR 322]  Dr. Laney assessed major depressive disorder and anxiety disorder NOS, as well as Axis II: obesity, migraines, arthritis, and fibromyalgia. [AR 322]

Plaintiff continued regular counseling with Ms. Andricovich, where she reported migraines, chronic pain and sleeping problems and although she was able to visit and care for her grandson, she was otherwise was still experiencing anxiety and isolation.  [AR 324-27] Plaintiff's work with Ms. Andricovich included goals towards lessening her anxiety and, later, managing her extensive medications.  During this time, Dr. Raney's assessment continued to be major depressive disorder, anxiety disorder, NOS, with an Axis III assessment of obesity, migraines, arthritis, and fibromyalgia and hypothyroid, as noted during visits on February 12, 2009, and May 4, 2009. [AR 322, 380].

On May 6, 2009, Ed Cotgageorge, Ph.D., a consultive examiner with Durango Psychological Associates, examined Plaintiff. [AR 356-63]  His diagnostic impressions were major depressive disorder by history; agoraphobia by history; her Axis III were deemed "non-contributory by report" and her Axis IV were: "moderate-to-severe, social, financial and occupational."  Her current GAF was assessed at 50. [AR 360]  Dr. Cotgageorge concluded that

> [Plaintiff] does appear to present with the previously diagnosed major depressive disorder, as well as agoraphobia and anxiety disorder. She appears to be trying to treat these disorders over the last few years, although somewhat unsuccessfully, and her Axis I diagnoses symptoms interfere with her capacity to work a full-time job and be consistent on any type of job.
>
> She has difficulties with memory, and while she does say she has problems with mathematics, her mathematical abilities seem to be one of her better cognitive abilities.  She also has some mild difficulties with attention.
>
> She is likely to have difficulties with learning new tasks, sustaining attention, and

persistence and work pace are likely to be extremely poor. [AR 360]

Dr. Cotgageorge also filled out a Medical Source Statement of Ability To Do Work Activities (Mental) form indicating that Plaintiff:  1) was markedly limited in her ability to: interact appropriately with coworkers; 2) was moderately limited in her ability to: interact appropriately with the public and with supervisors, and respond appropriately to usual work situations and changes in a routine work setting; and 3) was mildly limited in her ability to understand, remember and carry out complex instructions, and make judgments on complex work-related decisions. [AR 361-63]  He also identified "mild attention deficits" as affecting her capabilities. [AR 362]

Then, on July 7, 2009, Plaintiff was voluntarily admitted to Southwest Colorado Mental Health after Ms. Andricovich requested emergency services in response to Plaintiff's report that she was experiencing anxiety due to a possible eviction, she had no will to live and had a plan and the means to end her life. [AR 368-76, 445-51]  Her GAF was assessed at 35, and her mental status exam indicated insomnia, significantly decreased appetite, flat affect, depressed, anxious, fearful and sad mood. [AR 369]  She was cooperative, suspicious and had poor insight and judgment. [AR 369-70] A toxicology screen was positive for methamphetamines, although Plaintiff has indicated that she has never taken methamphetamines and did not know why this toxicology screen was positive. [AR 70-71, 368-70]  The diagnosis at that time was major depressive disorder, recurrent, anxiety disorder NOS, social phobia, generalized sedative, hypnotic, or/and anxiolytic abuse and dependent and borderline personality disorder NOS. [AR 373]  Upon her discharge on July 13, 2009, Plaintiff was assessed by Doug Balke, M.D., with dysthymia, generalized anxiety disorder, dependant personality disorder and social anxiety

disorder. [AR 377]  On July 31, 2009, Ms. Andricovich indicated that Plaintiff was making only minimal progress towards goals, but she was feeling more stable without suicidal ideation. [AR 443-44]

On September 3, 2009, Plaintiff saw Susan Watson, a Mental Health Nurse Practitioner at Southwest Colorado Mental Health Center. [AR 438-39] On examination, Ms. Watson reported that Plaintiff had a sad affect and mood, her sleep pattern is variable from two to four hours, and that her "concentration and memory are not normal, she frequently had me repeat things she did not understand."  Ms. Watson's assessment of Plaintiff was dysthymia, generalized anxiety disorder, dependant personality disorder and social anxiety disorder. [AR 438-39]  On the same day, Ms. Watson filled out a Medical Source Statement of Ability To Do Work-Related Activities (Mental) form regarding Plaintiff's abilities. [AR 407-09]  On that form, Ms. Watson opined Plaintiff: 1) was markedly impaired in the ability to understand, remember and carry out complex instructions, in her ability to make judgments on complex work-related decisions; 2) was moderately impaired in the ability to make judgments on simple work related decisions; and 3) was mildly impaired in the ability to understand and carry out simple instructions. [AR 407-09]  The factors supporting this assessment were identified as "extreme anxiety in social [and] work situations due to generalized anxiety [and] social anxiety disorder. Also low tolerance to any length of work day due to fibromyalgia, migraine [and] psychiatric symptoms." [AR 409]  Ms. Watson further opined that Plaintiff was impaired in her abilities to interact with others in that she: 1) was markedly impaired in her ability to respond appropriately to unusual work situations and to change in a routine work setting; 2) was moderately impaired in the ability to interact appropriately with the public and with supervisors;

and 3) was mildly impaired in the ability to interact appropriately with co-workers.  Ms. Watson

indicated she was limited due her generalized and social anxiety disorder, as well as her panic

attacks that interfere with her ability to work. [AR 408]  Finally, Ms. Watson opined that

Plaintiff was unable to stand or sit more than 15 minutes at a time, has chronic pain and cannot

understand long sentences or explanations, due to her fibromyalgia, right knee problem and a

neck injury. [AR 408-09]   In records furnished to the SSA Appeals Council, Plaintiff provided a

Colorado MED-9 form, dated January of 2010, in which Ms. Watson indicated that Plaintiff

would be disabled for 12 months or longer due to her anxiety – resulting in a difficult time

concentrating and remembering facts, and needing to have things repeated, as well as poor

memory, panic attacks, low mood energy and motivation.  In addition, her pain provided a

constant distraction and she uses a cane to walk. [AR 521-11]

     From September 2009 through April 2010, Ms. Andricovich's notes from their sessions

reveal heightened anxiety, as well as vertigo, migraines, and sleep disturbance.  Plaintiff

reported feelings of hopelessness and less contact with her daughter and grandson. [AR 422-37]

On November 24, 2009, Ms. Andricovich noted Plaintiff missed their last session and appeared

to be having difficulty with managing life, and was experiencing intense episodes of anxiety.

[AR 434]  During her April 30, 2010 appointment, Ms. Andricovich reported that Plaintiff health

appeared to be declining, as well as her ability to manage daily activities. [AR 422]  On June 17,

2010, Ms. Andricovich wrote a letter – addressed "To Whom It May Concern" – indicating that

despite weekly counseling sessions and medications for the past year, Plaintiff's depressive

symptoms, which are exacerbated by her social anxieties, have "actually intensified." [AR 474]

Ms. Andricovich opined that: "the severity of her mental health issues in my estimation negates

her ability to gain and/or sustain employment," that "these issues have not been alleviated by medication and counseling sessions" and they "appear no closer to resolution than when we began sessions." [AR 474]

Finally, in the additional records given to the SSA Appeals Council, Plaintiff provided a Colorado MED-9 form, dated March 14, 2012, in which Patti Snodgrass, M.D., indicated Plaintiff's diagnosis as major depressive disorder, recurrent, severe and anxiety disorder, NOS. Dr. Snodgrass opined that Plaintiff would be disabled for 12 months or longer due to her low energy, and her need to improve her coping and her mood, and indicated that Plaintiff "seems treatment resistant [as she has] multiple failed med trial and only partial response." [AR 524-25]

## B. Physical Health Records

The medical records related to Plaintiff's physical limitations prior to 2008 are limited to an MRI of her head, in 1999, related to her migraines. [AR 314-15]

In January 2008, Plaintiff was examined by consultative examiner Eugene Toner, M.D. Plaintiff complained of debilitating migraine headaches, asthma, and pain in her right shoulder; she also claimed to experience constant diarrhea and stiff ankles causing frequent falls. [AR 246] After examination, Dr. Tomer opined that Plaintiff's complaints were "far in excess of any objective findings" related to her physical complaints. Rather, he determined that:

> presentation is one of a significant psychiatric disorder. Her effort did not give me the idea that she was trying as hard as she was capable of doing, although I think that there are other interfering factors here. I highly recommend a psychiatric evaluation to determined whether or not these problems fit disability criteria. [AR 249]

As such, he found that "[i]t is impossible for me to make any specific evaluation regarding this claimant's complaints.  It is apparent that she is unable, in her present state, for whatever reason, to sustain activity for over an 8-hour period of time."  Finally, he notes that "[i]t is unlikely, in her present condition, that she is going to spontaneously have any remissions of her complaints or abilities." [AR 249]

On February 19, 2008, Plaintiff saw Jeff McElwain, a physician's assistant at Mancos Valley Health Center, complaining of several torn muscles, migraines, and depression; on exam, she had normal strength and no torn muscles.  [AR 410-11]

A month later, on March 17, 2008, Plaintiff received a physical from Debrah D. Archer, a family nurse practitioner at Community Health Clinic (at Dove Creek) because her mental health providers encouraged her to seek medical attention for her numerous physical complaints. [AR 291]  She complained of low back tenderness and pains in back and right leg, frequent falls, migraines, chronic joint pain in the neck and chronic fatigue.  On exam, Plaintiff weighed 220 pounds, had a focal point of extreme tenderness around L4-L5, and walked with a cane as her balance was off.  She was unable to do straight leg raise for back pain due to extreme pain in the knees bilaterally. Diagnosis included obesity, classical migraine not intractable, abnormality of gait and pain in joint, multiple sites. [AR 291-92]  In a Long Term Care Professional Medical Information form for the Montezuma Co. Health Department, dated March 28, 2008, Ms. Archer opined that Plaintiff "would greatly benefit from long term care" based on the following diagnoses:  major depressive disorder, anxiety disorder, asthma, chronic fatigue syndrome, and hypothyroidism. [AR 271-72]  She indicated that Plaintiff needs nutrition monitoring and help with certain tasks due to gait disturbances. [AR 272]

Plaintiff returned to the Community Health Clinic on March 31, 2008 for re-evaluation of her joint pain and fibromyalgia. [AR 289]  Plaintiff reported that her joint pain was decreased with medication, but that she still had trouble with extreme anxiety.  Upon questioning, an unnamed medical provider (presumably, Ms. Archer) opined that her migraines were stressed induced.   Plaintiff underwent an MRI of her spine, in April of 2008, which revealed generally normal results with moderate degenerative disc disease, minimal disc bulge, and mild to moderation degenerative narrowing. [AR 309-10]

On April 11, 2008 – during follow-up to an emergency room visit for kidney stones – an unnamed medical provider at the Community Health Clinic noted Plaintiff was doing better and her migraines were less frequent. [AR 287-88]  The assessment at that time included kidney stones, depression, anxiety disorder, PTSD, obesity, fibromyalgia, hypothyroidism and joint pain, right knee and hip.  It appears that Plaintiff was evaluated at Durango Orthopedics/Spine Colorado on May 9, 2008 [AR 367], where her diagnosis of fibromyalgia was confirmed because her issues were deemed not orthopedic in nature. [AR 281]  At that time she was referred for a pain psych evaluation, biofeedback and pain treatment. [AR 472]  She was also referred to physical therapy for bilateral leg/knee pain and fibromyalgia. [AR 473]

Next time Plaintiff reported to the Community Health Clinic, on June 3, 2008, she saw S. Bloink, M.D. [AR 285]  She reported that her pain was "all over" due to her fibromyalgia, and severe enough to cause suicidal thoughts.  Plaintiff then saw Ms. Archer on June 16, 2008, and reported improvement in her mental symptoms and in her gait. [AR 282-84]  On July 23, 2008, Plaintiff saw Dr. Bloink for her annual exam. [AR 280]  Dr. Bloink noted her multiple psychiatric diagnoses (major depressive disorder, anxiety/panic disorder, post traumatic stress

disorder, paranoia, mixed personality disorder, and fibromyalgia) and her history of migraine headaches, kidney stones, hypothyroidism, and asthma.  In his assessment, Dr. Bloink indicated that most of her problems are psychiatric and she is "apparently disabled."  [AR 281] Also at this time Dr. Bloink certified that Plaintiff was disabled – in that she required a ground floor apartment – "due to her medical conditions and tendency to fall." [AR 470-71]

Then, in May of 2009, Plaintiff saw Mark Schwartz, a physician's assistant at the Community Health Clinic, reporting a migraine and that it felt like her thyroid was not working right. She also complained that she was falling more due to her knee, and that she a had severe headaches (two times a week, sometimes up to three to four times a week).  Examination indicated that she weighed 217 pounds, and presented with a mildly flat mood and affect.  Mr. Schwartz noted her complex medical history, and opined that her fibromyalgia and fatigue are also a multifactorial. [AR 393-95]  Plaintiff saw Mr. Schwartz for follow-up on May 29, 2009, when she reported continuing migraine headaches and complaints of muscle and joint pain, with lack of energy, and chronic "poor quality sleep." [AR  390-91]  On July 31, 2009, Plaintiff reported to Mr. Schwartz episodes of difficulty breathing, chest tightening, and wheezing, frequently associated with panic attacks. [AR 388]  Mr. Schwartz recommended a repeat nocturnal oximetry due to her cluster of symptoms including fibromyalgia, depression, anxiety, daytime fatigue, and a history of nocturnal de-saturations.  He opined that the cause of her leg symptoms included fibromyalgia, chronic fatigue, and obesity. [AR 389]

## C.  Hearing Testimony

At the initial hearing before the ALJ, on September 16, 2009, Plaintiff appeared without her representative. [AR 62-90]  Her discussion with the ALJ reveals that she was unable to

14

represent herself, or provide relevant medical records which were not in the SSA file. As such,

her hearing was continued. [AR 88-89]  At her next hearing, held in front of a different ALJ on

June 22, 2010, Plaintiff testified that she had been treated for depression since 1995, and testified

as to the prescription medications she was taking.  [AR 56-58]   In addition, a vocational expert

testified what jobs would be available for her under three different hypothetical situations as

posed by the ALJ. [AR 58-61]

## II. LAW

I review the ALJ's application of the five-step sequential evaluation process used to

determine whether a claimant is disabled under Title XVI of the Social Security Act, which is

generally defined as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. §1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct.  2287,

96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity.  If

she is, disability benefits are denied.  *See* 20 C.F.R. §416.920.  Step Two is a determination of

whether the claimant has a medically severe impairment or combination of impairments as

governed by 20 C.F.R. §416.920(c).  If the claimant is unable to show that her impairment(s)

would have more than a minimal effect on her ability to do basic work activities, she is not

eligible for disability benefits.  Step Three determines whether the impairment is equivalent to

one of a number of listed impairments deemed to be so severe as to preclude substantial gainful

employment.  *See* 20 C.F.R. §416.920(d).  If the impairment is not listed, she is not presumed to

be conclusively disabled.  Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past.  If the claimant is able to perform her previous work, the claimant is not disabled.  *See* 20 C.F.R. §416.920(e)&(f).  Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience.  *See* 20 C.F.R. §416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since November 7, 2007, the date she filed her application (Step One). [AR 37]  The ALJ further determined that Plaintiff had the following severe impairments:  fibromyalgia, obesity, major depressive disorder, anxiety disorder not otherwise specified, panic disorder, and post traumatic stress disorder (Step Two), but that she did not have an impairment or combination of impairments that met or medically equaled a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 37]

The ALJ then determined that Plaintiff had the RFC to perform light work, except that it must require no more that occasional bending, squatting and kneeling, and must not requiring dealing with the general public. [AR 39]  After ruling that Plaintiff was unable to perform any past relevant work (Step Four), the ALJ went on to determine that Plaintiff could perform work existing in significant numbers in the national economy considering her age, education, work experience and RFC (Step Five). [AR 42-43]  As a result, the ALJ concluded that Plaintiff was

16

not disabled at Step Five of the sequential process and, therefore, was not under disability as defined by the SSA. [AR 43-44]

## V. STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987)(*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)). I may not re-weigh the evidence or substitute my judgment for that of the ALJ. *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).

With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996). Thus, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993).

17

# VI.  ISSUES ON APPEAL

On appeal, Plaintiff first contends that the ALJ erred in his assessment of the medical opinion evidence. I agree and, as such, remand for further proceedings.

When determining the weight to be given to medical opinions related to a claimant's impairments and limitations, treating physician opinions and examining physician opinions are entitled to more weight than the opinions of non-examining physicians who have never seen the claimant.  Opinions from examining physicians are generally entitled to less weight than those of a treating source, and the opinions of non-examining physicians who have never seen the claimant are generally entitled to the least weight of all.  20 C.F.R. §416.927(d)(1)*; Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Martinez v. Astrue*, 422 Fed. Appx. 719, 724 (10th Cir. 2011)(not selected for publication); *see also* Soc. Sec. Ruling 96–6p.  An ALJ must consider every medical opinion in the record.  20 C.F.R. §416.927(d).

In addition, the regulations require an ALJ to consider opinions from "other" medical sources in determining the severity of the claimant's impairment and how it affects his or her ability to function.  *Martinez v. Astrue*, *supra* (*citing* Soc. Sec. Ruling 06–03p, *Frantz v. Astrue*, 509 F.3d 1299, 1301–02 (10th Cir. 2007)).  "Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Martinez v. Astrue*, *supra* (*quoting* Soc. Sec. Ruling 06–03p).

With regard to Plaintiff's mental limitations, opinion evidence comes from Dr. Cotgageorge, Ph.D., a consultive examiner who saw Plaintiff in May of 2009.  Dr. Cotgageorge opined that Plaintiff was limited in her ability to interact with others – specifically, she was

markedly limited in her ability to interact appropriately with co-workers, moderately limited in her ability to interact appropriately with the public, and moderately limited in her ability to interact appropriately with supervisors and respond appropriately to usual work situations and changes in a routine work setting – and that she was mildly limited in her abilities to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. [AR 361-62]  The ALJ gave his opinion "limited weight" on the basis that:  1) although Dr. Cotgageorge's GAF assessment of 50 "indicates serious symptoms or any serious impairment in social, occupational, or school functioning," a "GAF score of 50 is closely approaching only moderate symptoms or any serious impairment in social, occupational, or school functioning;" 2) "there is nothing in the examination that supports a finding that [Plaintiff] is more limited in her ability to interact appropriately with co-workers as opposed to the public or supervisors;" and 3) Dr. Cotgageorge's examination findings supporting a determination that Plaintiff was not limited such as:  that she did not attempt to establish a rapport with him, and she seemed somewhat resistant to the evaluation; that her clothing was appropriate, eye contact was well modulated, speech was intact, and was oriented X3; and although her serial calculations were slow, her attention was good, as were her language skills and she answered all proverbs at their highest level of abstraction demands, and there were no difficulties noted with spatial abilities or copying. [AR 41]

However, I agree with Plaintiff that the ALJ's reasoning for, in essence, rejecting Dr. Cotgageorge's opinion regarding her mental limitations was insufficient.  First, the ALJ's finding that Plaintiff's GAF – as assessed by Dr. Cotgageorge – was approaching only moderate symptoms (when, in fact, to a GAF score  of 50 indicates serious symptoms) is flawed;

particularly when serious symptoms are consistent with the mental limitations assessed by Dr.

Cotgageorge.  Additionally, the fact that Dr. Cotgageorge opined that Plaintiff was markedly

limited in her ability to interact with co-workers/supervisors, while only moderately limited in

her ability to interact appropriately with the public, does not necessarily undermine his

conclusions.  Finally, the ALJ's reliance on Dr. Cotgageorge's examination findings that are not

supportive of his conclusions (i.e. that she appears to be supporting seeking) is not persuasive

when he has failed to acknowledge the substantial findings that support the specific limitations

assessed (i.e. that she is not particularly flexible and will have difficulty adapting to new work

situations and learning new tasks [AR 360]).  *See Robinson v. Barnhart, supra*, 366 F.3d at 1083

(ruling that an ALJ is not "entitled to pick and choose from a medical opinion, using only those

parts that are favorable to a finding of nondisability"); *see also Haga v. Astrue*, 482 F.3d 1205,

1208 (10th Cir. 2007)(remanding the case for further proceedings where the ALJ failed to

explain why he "adopted some of [the limitations expressed by a mental health professional] but

not others").

Instead, the ALJ's order indicated that he gave "more weight" to the a non-examining

state agency consultant (identified only as "M. Berkowitz") who opined, after reviewing

Plaintiff's medical records in January of 2008, that:  while Plaintiff's "overall stress tolerance

was reduced, she appeared capable of simple to slightly more complex tasks with no more that

moderate public contact;" she was moderately limited in the ability to maintain attention and

concentration for extended periods; she was moderately limited in her ability to perform

activities within a schedule, maintain regular attendance, and be punctual; and she was

moderately limited in her ability to complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without

an unreasonable number and length and rest period. [AR 41-42]  The consultant found no

evidence of limitations in Plaintiff's ability to:  understand and remember detailed instructions;

carry out detailed instructions; interact appropriately with the general public; get along with co-

workers or peers without distracting them or exhibiting behavioral extremes; or maintain socially

appropriate behavior and adhere to basic standards of neatness. [AR 42]  The consultant found

insufficient evidence to opine as to Plaintiff's ability to:  accept instructions and respond

appropriately to criticism from supervisors; and respond appropriately to changes in the work

place. [AR 42]  When assessing this opinion about Plaintiff's limitations, the ALJ indicated that

the consultant noted Plaintiff's depression was related to a past terrible marital situation, that

Plaintiff had been taking helpful medications, but had not been engaged in formal ongoing

psychotherapy, and her listed depressive symptoms appeared to be of moderate intensity, but she

managed to function and "handle her activities of daily living adequately."  Finally, the ALJ

determined that the medical records reviewed did not demonstrate any significant social defects,

her mental status examination generally reflected intact cognitive functioning, and her obesity

may have an adverse impact on her ability to persist. [AR 42]

   First, it is not clear from the ALJ's order what weight he gave to this opinion beyond

"more weight" than that given to Dr. Cotgageorge's opinion.  The ALJ apparently accepted the

consultant's opinion as it related to Plaintiff's areas of "no limitation," but it did not accept the

specific opinions (beyond no more that moderate public contact) that Plaintiff was moderately

limited in her attention and concentration, her ability perform activities within a schedule and

within a normal workday and workweek without interruptions, and to perform at a consistent

pace.  In addition, the ALJ's stated reasons for accepting some (but not all) of the specific

limitations, as opined by the consultant, fail to identify why those unaccepted limitations were

suspect.  *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)(noting that "in addition to

discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted

evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").   In

addition, I note that this opinion – dated in January of 2008 – was made based on his review of

limited medical records.

Finally, as to the opinions from "other" sources – namely, Susan Watson and Eileen

Andricovich – the ALJ gave these opinions "no weight."  Specifically, Ms. Watson filled out a

check list form in September of 2009, opining that Plaintiff was markedly limited in the ability to

understand and remember complex instructions; markedly limited in her ability to carry out

complex instructions, markedly limited in her ability to make judgments on complex work-

related decisions, and markedly limited in her ability to respond appropriately to usual work

situations and to changes in a routine work setting.  Ms. Watson also opined as to Plaintiff's

physical limitations.  The ALJ gave her opinion no weight because there are no examination

notes to support the level of mental limitations, and the physical limitations are contrary to the

medical records.  And,"[m]oreover, a nurse practitioner is not an acceptable medical source."

[AR 42]

In her argument, Plaintiff correctly notes that the ALJ's order does not contain an

analysis of any of the relevant factors used for assessing the medical opinions of other (non-

acceptable) medical sources.  *See* Soc. Sec. Ruling 06-03p (clarifying how an ALJ should

consider and weigh opinions from "other sources" by applying the factors for weighing the

opinions of "acceptable medical sources" in 20 C.F.R. §416.927(d)).  These factors include how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion.  *Id.*  Rather, the ALJ dismissed the opinion on the sole basis that there are no examination notes from Ms. Watson supporting her one-time opinion. Plaintiff also correctly notes that the Commissioner's post-hoc analysis provided here of the reasons that the opinion should be rejected – e.g. that the record indicate that Ms. Watson only saw Plaintiff one time – is inappropriate and not acceptable.  *See Robinson v. Barnhart, supra*, 366 F.3d 1084-85 (ruling that an ALJ's decision should be evaluated based solely on the reasons stated in the decision, not on the post-hoc arguments of the Commissioner)(citations omitted).

The ALJ also accorded Ms. Andricovich's opinion – that the severity of Plaintiff's mental health issues negates her ability to gain to sustain employment – no weight on the basis that she is not an acceptable medical source, "her opinion sets forth no specific limitations and is a bald conclusion that [Plaintiff] is unable to work" which is an issue reserved to the Commissioner.  [AR 42]  While it is clear that the opinion is clearly conclusory, the ALJ's order again fails to address the factors set forth in Social Security Ruling 06-03p and 20 C.F.R. §416.927(d).  *See, e.g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007)(noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §416.927 and Soc. Sec. Rul. 06–03p).

Finally, I note that the ALJ's order fails to address the only opinion of record from a treating physician; namely, Dr. Bloink's opinion that she is "apparently disabled" and his subsequent certification that she required a ground floor apartment in that she was disabled "due to her medical conditions and tendency to fall." [AR 281, 470-71]  Additionally, Plaintiff provided to the SSA Appeals Council several MED-9 forms – signed by her treating physicians and other treating sources – that state, without exception, their opinion that she is disabled. [AR 515-25]

Therefore, for the reason stated, I conclude that the ALJ's order failed to show that he properly weighed all medical opinion evidence and adequately set forth the reasons why a particular weight was assigned to the various medical sources.  Such failure to provide adequate reasons for an ALJ's decisions constitutes reversible error.  *See Reyes v. Bowen,* 845 F.2d 242, 245 (10th Cir. 1988); *see also Nagelschneider v. Astrue,* 617 F.Supp.2d 1115, 1118 (D.Colo. 2009)("[i]n short, 20 C.F.R. §416.927 makes clear that in every case involving supplemental security income benefits the Commissioner will weigh all medical opinion evidence and set forth the reasons why a particular weight was assigned to treating sources and other medical sources. Failure to follow this rule by not providing adequate reasons for an ALJ's decision constitutes reversible error").

Because the ALJ's order fails to show that he properly consider the opinion evidence of record, the decision of the Commissioner should therefore be reversed and the case remanded to the ALJ for further analysis, including the additional records provided to the SSA Appeals Council subsequent to the ALJ's decision in this case.  If such analysis results in any changes to the Plaintiff's RFC, the ALJ should re-determine what work she can perform, if any.

ACCORDINGLY, for the foregoing reasons, I REVERSE the Commissioner's final order and the case is REMANDED for further proceedings consistent herewith.


Dated: December  17 , 2014, in Denver, Colorado.


BY THE COURT:



 s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE